**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                    Case No. 20-20448

DUANE PETERSON,

        Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT DUANE PETERSON'S MOTIONS**
**TO SUPPRESS EVIDENCE OBTAINED FROM SEARCH WARRANTS**

Defendant Duane Peterson moves to suppress evidence and all fruits of the

search conducted pursuant to two state search warrants. One was issued on August 7,

2018 to search a hotel room where Defendant was staying (ECF No. 240.)[1] The other

was issued on August 20, 2018 to search the content of Defendant's cell phones found

in the hotel room (ECF No. 232.)[2] Regarding the latter, the government has indicated

that it will not introduce evidence from Defendant's phones in its case-in-chief. (ECF No.

247, PageID.1467.) The court agrees with Defendant that his issues with the August 20

cell phone warrant are moot. (ECF No. 253, PageID.1673.) Remaining for the court are

Defendant's challenges to the August 7 hotel room search warrant.

First, Defendant claims that the warrant lacks sufficient particularized probable

cause, because no nexus linked the searched location and the criminal activity

_____

[1] While Defendant styles ECF No. 240 as "Supplement" to ECF No. 232, these filings
address two separate warrants and are in effect two separate motions.
[2] Defendant states that his motion "did not extend [to] the two phones identified as
Murphy's [(Defendant's girlfriend)]." (ECF No. 253, PageID.1673.)

attributed to him. He then contends that the information in the supporting affidavit was stale. Finally, he asserts that the affidavit contained intentional or reckless falsity that, if omitted, would have vitiated the probable cause.

The government has filed a response, refuting Defendant's contentions. (ECF No. 247.) Additionally, it maintains that even if the search warrant lacks probable cause, good faith exception applies.

The motion has been fully briefed, there are no facts requiring verification that are material to the court's analysis, and a factual hearing, with or without argument, is not necessary. E.D. Mich. L.R. 7.1(f)(2). For the reasons stated below, the court will deny the motion.

## I.   BACKGROUND

On August 7, 2018, police applied for a warrant to search Room 234 of the Comfort Inn Hotel in Detroit with a supporting affidavit that presented the following facts:

- The affiant was a detective assigned to the Violent Gang Task Force with over 18 years of experience in law enforcement.

- On March 3, 2018,[3] police officers spoke to a gunshot-wound victim. The victim stated that earlier that day, he was a passenger in a car with two others. As the car stopped for a red light, the occupants observed a fight between a male and a female. Another male approached the passenger side of their car, pulled out a handgun, and pistol whipped the front seat passenger. The male who had been punching the female removed a handgun

---

[3] The Government indicates that this is a typographical error, as the shooting occurred on March 6, not March 3. (ECF No. 247, Page ID.1461, n.1.)

from his waistband and started shooting at the vehicle, striking the victim in the shoulder. The second male also fired shots at the vehicle as it drove away.

- On March 7, 2018, the victim recounted the events again to the police. On that day, the police also obtained surveillance videos from the location where the fighting between the man and the woman occurred.

- On March 13, 2018, witness who had been the front seat passenger of the car identified Demontae Foster in a photo array.

- On March 16, 2018, Foster, who had been arrested, identified himself and Defendant as the shooters.

- On June (or July [4]) 26, 2018, a review of the surveillance footage confirmed Defendant as the other shooter. A county circuit court then "authorized a felony indictment" charging Defendant with assault with intent to murder.

- On August 7, 2018, law enforcement initiated an operation to locate and arrest Defendant. While checking areas known to be frequented by Defendant and his favored types of vehicles based on source information, the officers came across a white GMC Acadia (Defendant was known to use one) parked in front of the Comfort Inn in Detroit. They then confirmed Defendant's presence in Room 234 by accessing the hotel's guest information and surveillance footage obtained via a federal administrative subpoena, as well as their own stationary surveillance of the location and its entrance and exit.

---

[4] The warrant stated "June July 26th 2018." (ECF No. 248, PageID.1472, ¶8.) This is plainly a typographical error. The exact date is not material to the court's analysis.

- Through training and experience, the affiant, who was a member of the Violent Gang Taskforce, knew Defendant to be a high-ranking member of the violent street gang "IJU" aka "It's Just Us" and believed Defendant was a threat to the community.

- In the affiant's experience, possessors of firearms kept them for extended periods of time, even after using them in crimes, and frequently stored them in familiar and accessible locations.

(ECF No. 248, PageID.1471-73.)

A county prosecutor signed off, approving the affidavit, and a county magistrate signed and issued the warrant. (*Id.*, PageID.1471.) On the same day, law enforcement executed the signed search warrant at Room 234 of the Comfort Inn Hotel, where they arrested Defendant and seized evidence, including a firearm.

## II.  STANDARD

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The purpose of the Fourth Amendment is "to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Taylor v. City of Saginaw*, 922 F.3d 328, 332 (6th Cir. 2019) (quoting *Camara v. Mun. Court of San Francisco*, 387 U.S. 523,528 (1967)). "[W]hat the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." *Terry v. Ohio*, 392 U.S. 1, 9 (1968) (quoting *Elkins v. United States*, 364 U.S. 206, 222 (1960)).

The Fourth Amendment "contains no provision expressly precluding the use of evidence obtained in violation of its commands." *Herring v. United States*, 555 U.S. 135,

139 (2009) (quoting *Arizona v. Evans*, 514 U.S. 1, 10 (1995)). Over the course of many years, the Supreme Court developed the "exclusionary rule," which "forbids the use of improperly obtained evidence at trial." *Id.* The rule is "designed to safeguard Fourth Amendment rights generally through its deterrent effect" and is not a "necessary consequence of a Fourth Amendment violation." *Id.* at 139–40, 141 (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)); *Davis v. United States*, 564 U.S. 229, 236–37 (2011) (citations removed) ("Exclusion is not a personal constitutional right, nor is it designed to redress the injury occasioned by an unconstitutional search. The rule's sole purpose . . . is to deter future Fourth Amendment violations.").

The exclusionary rule serves to "prohibit[] introduction into evidence materials seized during an unlawful search, and of testimony concerning knowledge acquired during an unlawful search." *United States v. Howard*, 621 F.3d 433, 451 (6th Cir. 2010) (quoting *Murray v. United States*, 487 U.S. 533, 536–37 (1988)). It also prohibits "the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes so attenuated as to dissipate the taint." *Id.*

In deciding whether evidence was obtained illegally, "the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial." *United States v. Raddatz*, 447 U.S. 667, 679 (1980); Fed. R. Civ. P. 104(a) ("The court must decide any preliminary question about whether . . . evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege.").

## III. DISCUSSION

### A.  Probable Cause

The Fourth Amendment requires probable cause to issue a search warrant. U.S. Const. amend. IV; *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005). A court's review of the sufficiency of the evidence supporting probable cause is "limited to examining the information contained within the four corners of the affidavit." *United States v. Dyer,* 580 F.3d 386, 390 (6th Cir. 2009).

Probable cause is "a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Algie,* 721 F.2d 1039, 1041 (6th Cir. 1983) (internal quotation marks and citations omitted). This definition requires the reviewing magistrate to find a fair probability of two related facts. First, there must be a fair probability that evidence of a crime is still in existence. Second, there must be a fair probability that such evidence is in the place or places specified in the warrant; this latter "fair probability" is sometimes referred to as the "nexus" requirement. *See Laughton,* 409 F.3d at 747-48.

"The probable cause standard is a 'practical, non-technical conception' that deals with the 'factual and practical considerations of everyday life.'" *Id.* (quoting *Illinois v. Gates,* 462 U.S. 213, 231 (1983)). "When reviewing a magistrate's determination that probable cause existed for the issuance of a search warrant, [a court] must determine, under a totality of the circumstances, whether 'the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing.'" *United States v. Miggins,* 302 F.3d 384, 394 (6th Cir. 2002) (quoting *United States v. King,* 227 F.3d 732, 739 (6th Cir. 2000)). The court affords the magistrate's probable cause

determination "great deference," and such determination "should not be set aside unless arbitrarily exercised." *United States v. Pelham,* 801 F.2d 875, 877 (6th Cir. 1986) (citations omitted). In service of this standard, an "affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen,* 211 F.3d 970, 975 (6th Cir. 2000).

Taken as a whole, the circumstances provided in the affidavit presented a sufficient nexus linking the firearm used in the shooting to the searched hotel room. The affidavit established Defendant's identity, confirmed by named witnesses, as the responsible shooter who kept firearms on his person. A state court had found sufficient probable cause to charge Defendant with assault with intent to murder. *See Libretti v. Woodson*, 600 Fed. Appx. 367, 372 (6th Cir. 2015) ("A recent indictment may also factor into the probable cause determination."). On the day of the warrant application, the police confirmed Defendant's presence in the searched hotel room through the facility's information and video, as well as their own surveillance. Based on the affiant's extensive law enforcement experience, possessors of firearms keep them for extended periods of time, even after using them to commit a crime, and frequently stored them in familiar and accessible locations, like residences and businesses. The magistrate was entitled to consider the affiant's experience. It conceivably comports with the common-sense judgment that "firearms are durable goods and might well be expected to remain in a criminal's possession for a long period of time," *United v. Pritchett*, 40 Fed. Appx. 901, 905-06 (6th Cir. 2002), as well as the reasonable assumption "that a person keeps his possessions where he resides." *Peffer v. Stephens*, 880 F.3d 256, 270 (6th Cir. 2018) (holding that "a suspect's use of a gun in the commission of a crime is sufficient

to find a nexus between the gun that was used and the suspect's residence"). The magistrate did not arbitrarily exercise his authority in finding probable cause.

Defendant quarrels with the probable cause determination focusing on the affiant's failure to state that a *particular* firearm was likely to be found, but merely that finding one would assist a thorough investigation. (ECF No. 240, PageID.1394.) The court reviews the affidavit "in a commonsense-rather than a hypertechnical-manner." *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004). "Affidavits are not required to use magic words, nor does what is obvious in context need to be spelled out." *Allen*, 211 F.3d at 975.

In his reply brief, Defendant for the first time challenges the credibility of his co-shooter and the affiant's knowledge regarding Defendant as a high-ranking and violent gang member. (ECF No. 253, PageID.1674). Long-standing Sixth Circuit precedent provides that arguments and issues newly raised in a reply brief are waived (or "forfeited," *see United States vs. Montgomery,* 998 F.3d 693, 698 (6th Cir. 2021)):

> Raising the issue for the first time in a reply brief does not suffice; reply briefs reply to arguments made in the response brief – they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration. Further the non-moving party ordinarily has no right to respond to the reply brief, at least not until oral argument. As a matter of litigation fairness and procedure, then, we must treat [such issues] as waived.

*Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (citation omitted) (alteration in original); *see also United States v. Lopez-Medina,* 461 F.3d 724, 743, n.4 (6th Cir. 2006) (declining to consider arguments raised for the first time in a party's reply brief) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)).

In any case, Defendant's contentions lack merit. First, they "improperly attack the credibility of witnesses, which is a function of the jury at trial, not the judge making the

preliminary, baseline determination about whether 'probable cause' exists to issue a search warrant." *United States v. Gregory*, 311 F. App'x 848, 857 (6th Cir. 2009) (citing *United States v. Beverly*, 369 F.3d 516, 532 (6th Cir. 2004)). Specific to Defendant's allegations about Foster's credibility, Foster was named in the affidavit, so little corroboration is required. *See e.g., United States v. Hodge*, 714 F.3d 380, 384-85 (6th Cir. 2013) ("Statements from a source named in a warrant application, such as Banks, are generally sufficient to establish probable cause without further corroboration because the legal consequences of lying to law enforcement officials tend to ensure reliability.") (citing *United States v. Miller,* 314 F.3d 265, 269-70 (6th Cir. 2002); *United States v. Williams*, 544 F.3d 683, 690 (6th Cir. 2008) (finding that "the warrant . . . named the informants, and named informants, unlike confidential informants, require little corroboration"). Moreover, the affidavit provided indicia of credibility for Foster's identification of Defendant as the other shooter – the video surveillance. *See United States v. Combs*, 369 F.3d 925, 938 (6th Cir. 2004) (holding that probable cause supported issuance of search warrant because not only was the informant named, but his statements also corroborated other information the police already had).

Similarly, the court views as unfounded Defendant's argument that the affiant could know that Defendant was a violent gang member only through unnamed informants. In fact, the affiant had knowledge of this fact by being a detective in the Violent Gang Taskforce, a fact clearly stated in the affidavit. (ECF No. 248, PageID.1473, ¶10.)

In short, the warrant affidavit provided sufficient information for the magistrate judge to infer a nexus linking the gun from the shooting to the hotel room Defendant was staying on August 7, 2018.

### B.  Staleness

The court turns next to Defendant's staleness argument. (ECF No. 240, PageID.1394-95.) "Staleness" refers to the precept that probable cause "is concerned with facts relating to a presently existing condition," *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998) (quotation omitted). However, "the function of a staleness test in the search warrant context is not to create an arbitrary time limitation within which discovered facts must be presented to a magistrate." *Id*. "[T]he length of time between the events listed in the affidavit and the application for the warrant, while clearly salient, is not controlling." *Id*. "The staleness inquiry is tailored to the specific circumstances in each case." *United States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2006).

"The critical question," in consideration of staleness, "is whether the information contained in the affidavit, when presented to the ... judge, established that there was a fair probability that [evidence] would still be found at [the location of the search]." *Id*. (quotation omitted). In analyzing whether information is stale, the court considers the following factors:

> (1) the character of the crime (chance encounter in the night or regenerating conspiracy?),
>
> (2) the criminal (nomadic or entrenched?),
>
> (3) the thing to be seized (perishable and easily transferable or enduring utility to its holder?), and
>
> (4) the place to be searched (mere criminal forum of convenience or secure operational base?).

*United States v. Frechette*, 583 F.3d 374, 278 (6th Cir. 2009) (citation omitted).

Regarding the first factor, the court finds that the nature of Defendant's crime cannot be described in terms of a "chance encounter in the night," but rather it suggested an ongoing violent criminal enterprise in which Defendant was a participant. This conclusion does not come solely from the affiant, but also from the witnesses' testimony and corroborating evidence described in the affidavit. The victim informed the police about seeing a man, later identified as Defendant, beating a woman and firing shots at an occupied car just because the occupants happened to witness his violent act. Defendant's associate, Foster, approached the car with a gun, pistol whipped one of the occupants, and later joined in the shooting. From all this, Defendant was charged with assault with intent to murder. Law enforcement had to initiate an operation to locate him and secure his arrest; this demonstrated that Defendant was on the run. Such circumstances were indicative of a continuing violent and criminal enterprise.

For the second factor, a defendant may be considered nomadic when he moves "from place to place, so as to decrease the probability of finding evidence at a given location." *Abboud,* 438 F.3d at 573. Because Defendant was evading arrest, he could be seen as nomadic. However, police were able to confirm his presence in areas where Defendant was known to frequent, which also suggests entrenchment. Consequently, this factor is neutral.

The third factor focuses on the thing to be seized – here, a firearm. The Sixth Circuit have recognized that "[f]irearms are durable goods and might well be expected to remain in a criminal possession for a long period of time." *Pritchett*, 40 Fed. Appx. at 905-06 (witness's report of seeing defendant in possession of firearms four months

before warrant's issuance not "stale"); *see also United States v. Lancaster,* 145 Fed. Appx. 508, 513 (6th Cir. 2005) (holding that information from a confidential informant who witnessed defendant fire a machine gun two years earlier was not stale, emphasizing "the durable nature of firearms"). Additionally, the affidavit at issue established that guns had utility to Defendant, who kept them on his person and readily used them. This factor thus weighs against staleness.

The court finds that the last factor leans slightly against Defendant. One court in the Sixth Circuit has observed that a "hotel room to be searched was a more temporary accommodation than a residence, but certainly not a momentary or passing location." *United States v. Bennerson*, No. 1:19-CR-76, 2019 WL 4894943, at *5 (E.D. Tenn. Oct. 4, 2019). Here, the affidavit indicated that Defendant remained in the same hotel room for the entire time law enforcement located the type of car he used, obtained a subpoena to gather guest information, reviewed surveillance video to confirm Defendant's check-in, and conducted a stationary surveillance of the location. Also noted is that Defendant was currently evading arrest and that the hotel was in one of Defendant's frequently visited areas. Room 234 of the Comfort Inn consequently resembled less a mere forum of convenience for Defendant and more a safe house in which Defendant could remain in hideout, where guns – known to be kept with Defendant's person – would reasonably be found. Additionally, law enforcement confirmed Defendant's presence in Room 234, sought a search warrant, and executed it on the same day.

Considering the totality of the circumstances, the court finds that the August 7 affidavit provided sufficiently fresh information to suggest a fair likelihood that Defendant's firearm would be found in the hotel room he was staying.

### C.  Intentional or Reckless Material Misstatement or Omission

Finally, Defendant asserts that the August 7 affidavit contained intentionally or recklessly made falsehoods, the absence of which would negate probable cause. In his motion, Defendant does little to develop this claim; instead, he waits until replying to the government's response to clarify and include supporting evidence. As explained above, this is not proper. In any event, his argument lacks merit.

Although search warrant affidavits are presumed to be valid, a defendant is entitled to a hearing to challenge a warrant's validity if he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155–56, (1978). The search warrant must be voided and the results of the search excluded only if the defendant establishes his allegations by a preponderance of the evidence and the remaining content is insufficient to establish probable cause. *Id.* at 156. While an omission in an affidavit may support a *Franks* hearing, the Sixth Circuit has recognized that an omission "is less likely to present a question of impermissible official conduct than one which affirmatively includes false information." *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997) (citing *United States v. Martin*, 920 F.2d 393, 398 (6th Cir. 1990)). "This is so because an allegation of omission potentially opens officers to endless conjecture about investigative leads,

fragments of information, or other matter that might, if included, have redounded to defendant's benefit." *Id.*

Defendant challenges the veracity of the August 7 affidavit in three respects: (1) the police's affirmative identification of Defendant after reviewing the surveillance video from the scene of the shooting, (2) the omission of the fact that Defendant's girlfriend was staying with him in the hotel room, (3) the omission of the fact that Defendant had discarded a firearm after a crime. (ECF No. 253, PageID.1679-80.)

First, contrary to Defendant's assertion, the affidavit did not allege the existence of a video showing Defendant as the shooter. (*Id.*, PageID.1674.) Rather, it states, "after reviewing the surveillance footage recovered from the scene of the incident, [Defendant] was positively identified as the other shooter in the video." (ECF No. 248, PageID.1472.) Defendant does not dispute that the surveillance videos gathered from the crime scene show Defendant and Foster being in the store together, Defendant being in the parking lot beating a woman who matched the victim's description, and Defendant walking back to his car after the victim's car drove off. Foster, who confessed to shooting the car, had already identified Defendant as the other shooter. Reviewing these video footages, which corroborated witnesses' statements, certainly affirmed Defendant's identity. The court sees no overt falsity with the affiant's statement to that effect.

Second, Defendant takes issue with the affidavit omitting that he was not alone in the hotel room, but with his girlfriend. However, Defendant offers northing showing that this omission was deliberately or recklessly made, or that it was material. Defendant also does not explain how "the only reasonable inference is that this [was] nothing more

than a romantic tryst" or how his "merely-a-tryst" argument is supposed to negate a finding of probable cause. It is well accepted that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 996 (6th Cir. 1997) (citation omitted) (alteration in the original omitted); *see also United States v. Hayter Oil Co.,* 51 F.3d 1265, 1269 (6th Cir.1995) (finding that defendant waived argument when he did nothing more than make conclusory assertion that rights were violated and made no attempt to show prejudice); *United States v. Phibbs,* 999 F.2d 1053, 1080 n.12 (6th Cir.1993) ("[I]t is not our function to craft an appellant's arguments.").

Defendant then challenges the omission from the affidavit that the affiant knew Defendant's history of discarding a firearm after a crime. Defendant attached one murder investigation report as an exhibit to his reply. (ECF No. 254, PageID.1683-86.) That report indicated that a man later identified as Defendant was seen on video throwing a gun on a roof while committing a crime. (*Id.*, PageID.1684.) However, nowhere on the report does it indicate that the affiant of the August 7 affidavit, Detective Michael Reizin, had any involvement with this investigation. (*Id.*) Defendant also offers no explanation for his contention that Detective Reizin is supposed to have known about this event, or to have possessed any evidence connecting Defendant with a purported history of discarding firearms after committing crimes. Consequently, such conclusory assertions are insufficient to overcome the "presumption of validity" afforded to affidavits. *Franks,* 438 U.S. at 171. Additionally, Defendant does not detail how

including the fact that Defendant once discarded his firearms after a crime would negate the probable cause to believe that he still had the gun with him in the searched hotel room. "It is always possible that criminals will dispose of incriminating evidence prior to a search, but that possibility does not defeat probable cause." *United States v. Aljabari*, 626 F.3d 940, 946, n.1 (7th Cir. 2010). "[P]robable cause does not require 'near certainty,' only a 'fair probability.'" *United States v. Terry*, 522 F.3d 645, 649 (6th Cir. 2008).

Defendant has not made a substantial preliminary showing that the affiant intentionally or recklessly misstated or omitted information necessary for probable cause. Consequently, he is not entitled to a *Franks* hearing to invalidate the warrant and suppress the fruit of the search on this ground.

### D.  Good Faith Exception

The parties also disagree on whether the "good faith" exception would apply to the officer's reliance on the warrant. "When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in criminal proceeding against the victim of the illegal search and seizure." *United States v. Carpenter,* 360 F.3d 591, 595 (6th Cir. 2004) (quoting *Illinois v. Krull,* 480 U.S. 340, 347 (1987)). However, "[t]he fact that a Fourth Amendment violation occurred ... does not necessarily mean that the exclusionary rule applies." *Herring v. United States,* 129 S.Ct. 695, 700 (2009). Even if a reviewing court concludes that a warrant lacked probable cause, courts should not suppress "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *Carpenter,* 360 F.3d at 595 (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)). "The burden rests on

the government to prove that [the executing officer's] reliance on a warrant was objectively reasonable." *United States v. Rissew,* 580 Fed. Appx. 35, 36 (2nd Cir. 2014).

For the reliance to be reasonable, the affidavit must not be "bare bones," meaning it must identify a "minimally sufficient nexus" between the place to be searched and the evidence to be seized. *See United States v. Reed*, 993 F.3d 441, 450 (6th Cir. 2021) (citing *Carpenter*, 360 F.3d at 596). A "minimally sufficient nexus" is present where there is "some connection, regardless of how remote it may have been – some modicum of evidence, however slight – between the criminal activity at issue and the place to be searched." *Id.* (citing *United States v. McCoy*, 905 F.3d 409, 418 (6th Cir. 2018)). "The inquiry into whether an affidavit is so bare bones as to preclude application of the good-faith exception is a less demanding inquiry than the one involved in determining whether an affidavit provides a substantial basis for the magistrate judge's conclusion of probable cause." *United States v. Rose*, 714 F.3d 362, 367 (6th Cir. 2013) (citing *Laughton*, 409 F.3d at 748-49).

As discussed above, the court finds that the August 7 search warrant was supported by probable cause. Even if the court had come to a different conclusion, the government has met its burden of showing that an objectively reasonable law enforcement officer would have reasonably relied on the warrant. Here, there was substantially more than some slight "modicum of evidence" connecting evidence of the shooting with the hotel room where Defendant was staying. The affidavit described the crime and named witnesses identifying Defendant as the shooter who kept a gun on his person. A court charged Defendant with the shooting. The affidavit recounted the steps taken by the police to ascertain Defendant's presence in the to-be-searched location.

The affiant knew that Defendant was a high-ranking gang member and posed a threat to the community. The affiant's extensive law enforcement experience indicated that possessors of gun kept them for a long time, even after using them to commit crimes, and stored them in familiar and accessible locations. Common sense dictates that the hotel room where Defendant was staying was a location "accessible" to him. In sum, the affidavit at issue is not the type of "bare bones" affidavit that is lacking in any indicia of probable cause.

The Sixth Circuit has found the good faith exception applicable in cases where the warrant affidavits provided less. For example, in *United States v. Savoca*, 761 F.2d 292 (6th Cir. 1985), a search warrant affidavit "establish[ing] only that two persons known to have been involved in several bank robberies were observed on [a motel room two thousand miles from the place of the robberies]" was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 294-95, 298. In *United States v. Schultz,* 14 F.3d 1093 (6th Cir. 1994), the court found that an affidavit offered for a warrant to search a safe deposit box was deficient because the affiant "did not have anything more than a guess that contraband or evidence of a crime would be found in [deposit] boxes." *Id.* at 1097-98. Nevertheless, the court concluded that the officer's belief in the warrant's validity was not "entirely unreasonable" because he had evidence to believe that criminal activity had occurred *somewhere,* even if none of it pointed to the safe deposit boxes in question:

> But we cannot say that this warrant was "so lacking." As previously discussed, Officer Ideker certainly had probable cause to believe that Schultz had committed a crime. Moreover, although we have held that his "training and experience" were not sufficient to establish a nexus of probable cause between that crime and the safe deposit boxes, the connection was not so remote as to trip on the "so lacking" hurdle.

18

*Id.* at 1098.

Then, in *United States v. Van Shutters*, 163 F.3d 331 (6th Cir. 1998), "the affidavit completely neglect[ed] to indicate why the affiant believed that [Defendant] himself had any connection with the [searched location]." *Id.* at 336. Nonetheless, the court found that the good faith exception applied. There, the affidavit (1) stated that the affiant has personal knowledge that defendant had been involved in an on-going criminal enterprise, (2) described the suspected criminal activities, (3) described the searched location with particularity to provide a common sense inference that the Defendant visited the location, (4) stated that the affiant had extensive law enforcement experience, and (5) stated that defendant had been identified by the victims of his crimes. *Id.* at 337-38. The court was thus "of the opinion that only a police officer with extraordinary legal training would have detected any deficiencies in that document." *Id.* at 337. In this case, not only did the affidavit have all the same information as in the *Van Shutter* affidavit, but it also described how law enforcement confirmed Defendant's presence in Room 234 of the Comfort Inn.

Additionally, the affidavit was signed off—approved—by an assistant prosecutor before being presented to the issuing magistrate. This fact has been recognized as an important piece of evidence demonstrating the officer's good-faith belief in the propriety of the affidavit. *See Massachusetts v. Sheppard*, 468 U.S. 981, 989 (1984) (noting the fact that the detective "prepared an affidavit which was reviewed and approved by the District Attorney" helped demonstrate that "[t]he officers in this case took every step that could reasonably be expected of them"); *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012) (finding that "the fact that the officers sought and obtained approval of the

warrant application from a superior and a deputy district attorney before submitting it to the Magistrate provides further support for the conclusion that an officer could reasonably have believed that the scope of the warrant was supported by probable cause"); *United States v. Bynum*, 293 F.3d 192, 198 (4th Cir. 2002) (finding the fact "that [the affiant] consulted with the prosecutor prior to applying for the search warrant provides additional evidence of his objective good faith, like the law enforcement officer in *Leon*…"); *United States v. Pappas*, 592 F.3d 799, 804 (7th Cir. 2010) (The affiant's "efforts to consult with an Assistant United States Attorney prior to seeking a warrant further demonstrate her good faith."); *United States v. Johnson*, 78 F.3d 1258, 1264 (8th Cir. 1996) ("Seeking the advice of an attorney can be factored in to determine if an officer's conduct is objectively reasonable."); *United States v. Brown*, 951 F.2d 999, 1005 (9th Cir. 1991) ("[A]n officer's consultation with a government attorney is of significant importance to a finding of good faith ..."); *United States v. Taxacher*, 902 F.2d 867, 872 (11th Cir. 1990) (An officer's consultation "with the local district attorney before seeking the search warrant, and then submit[ting] the matter to a neutral magistrate" was "indicative of objective good faith.").

Defendant further argues that the good faith exception does not apply when the affiant knowingly and recklessly misstates or omits material information in the affidavit. Defendant correctly states the law. "[T]he good-faith exception does not apply when the supporting affidavit contained knowing or reckless falsity in violation of *Franks*." *United States v. Abernathy*, 843 F.3d 243, 257 (6th Cir. 2016) (citing cases) (quotation marks omitted). However, as explained above, Defendant has not identified any knowing and reckless falsity in violation of *Franks*.

In his reply, Defendant indicates that the use of administrative subpoena in this case was "in keeping with the lack of good faith and complete cowboy [sic] disregard for legal requirement." (ECF No. 253, PageID.1680.)[5] Defendant then provides a cursory explanation, with no support, as to why he believed the administrative subpoena was illegally issued for the hotel's records. (*Id.*) As indicated above, it is not proper procedure for Defendant to raise an argument for the first time in his reply. At first blush, the court wonders what constitutional standing Defendant has to challenge the subpoena. *United States v. Russell*, 26 F.4th 371, 374 (6th Cir. 2022) ("Fourth Amendment rights are said to be 'personal.' So a defendant must show that 'his own' rights were 'infringed.'") (citations omitted). In any case, because of Defendant's lack of effort in presenting the court with a developed argument, he has waived or forfeited this issue. *McPherson*, 125 F.3d at 995.

### IV. CONCLUSION

Here, the affidavit in support of the August 7, 2018 search warrant contained the requisite facts for the issuing judge to find probable cause. Defendant fails also to carry his burden to show any knowing or reckless falsity material to the probable cause calculus, thereby precluding a *Franks* hearing. And even if the search warrant were defective, the good-faith exception applies, making exclusion an inappropriate remedy.

Accordingly, IT IS ORDERED that "Defendant's Motion to Suppress Evidence Obtained as a Result of Search Warrant" (ECF No. 232) is DENIED AS MOOT.

---

[5] In his motion, Defendant asserts, without any explanation, that the "agents **illegally** issued an administrative subpoena for video and guest information." (ECF No. 240, PageID.1393, 1394) (emphasis in original).

"Defendant's Supplement to His Motion to Suppress Evidence Obtained as a Result of

Search Warrant" (ECF No. 240) interpreted as another motion is DENIED.

s/Robert H. Cleland           /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: August 10, 2022


I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, August 10, 2022, by electronic and/or ordinary mail.

s/Lisa Wagner     /
Case Manager and Deputy Clerk
(810) 292-6522

Z:\Cleland\JUDGE'S DESK\C2 ORDERS\20-20448.PETERSON.SuppressPetersonSearchWarrants.NTH.v3.RHC.v3.docx