**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                                  Case No. 20-20448

D-1 DUANE PETERSON,

        Defendant.
_____/

**OPINION AND ORDER SETTING ASIDE OCTOBER 5, 2022 ORDER**
**AND DENYING DEFENDANT DUANE PERSON'S MOTIONS TO SUPPRESS**
**EVIDENCE OBTAINED FROM SEARCH WARRANTS**

Defendant Duane Peterson moves to suppress evidence and all fruits of the warranted search of two cellular phones in his possession when he was arrested. (ECF No. 296.) On October 5, 2022, the court struck Defendant's motion for being untimely. (ECF No. 318.) However, at the October 13, 2022 hearing, the Government indicated that it could not indisputably verify that the warrant at issue in Defendant's motion was disclosed before the motion cut-off date, and subsequently filed a response (ECF No. 326.) Having reviewed the record, the court finds a hearing is not necessary. E.D. Mich. L.R. 7.1(f)(2). The court will set aside its October 5, 2022 Order and, for the reasons stated below, deny Defendant's motion on the merits.[1]

---

[1] The court needs not revisit the timeliness issue of Defendant's motion because it also lacks merits.

## I. BACKGROUND

On July 21, 2017, Detroit police applied for a warrant to search two cell phones in Defendant's possession when he was arrested with an affidavit that stated the following facts:

- The affiant was an officer assigned to the Major Crimes/Homicide Unit of the Detroit Police Department ("DPD"), with over 18 years of law enforcement experience.

- On May 17, 2017, DPD responded to a fatal shooting in Detroit. The victim was found dead from multiple gunshot wounds.

- A surveillance video showed two armed suspects chasing victim out of view. A few minutes later, the two suspects were seen running back, pausing to throw their guns on top of the roof of a nearby building, and leaving the area in a vehicle.

- The two guns thrown on the roof were recovered and found to be the same caliber as the casings recovered near the victim's body.

- The victim's family indicated that the victim was at Trolleys Bar just prior to the shooting. Video surveillance from that area showed synchronized movements of three vehicles before the shooting, after which the suspects left using one of the cars.

- The victim's family informed the police that a man associating with the Facebook page "IJU Winning" was involved in the shooting. Facial recognition performed on one of the photos uncovered from searching that name matched Defendant.

- One of the persons seen running after the victim and throwing a gun on the roof wore the same clothing as Defendant's, as shown on the video from Trolleys Bar.

- On July 20, 2017, Defendant was arrested. He identified himself as the person in the Trolleys Bar video. He did not offer any additional information.

- At the time of his arrest, Defendant possessed two phones: a white and gold iPhone and a grey Verizon Samsung flip phone.

- The affiant offered that he had probable cause to belief the phone contained evidence related to the fatal shooting.

(ECF No. 326-2, PageID.2744-45.)

A county prosecutor signed off the affidavit, and a county magistrate judge signed and issued the warrant. (*Id.*, PageID.2743, 2745.)

## II.  STANDARD

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The purpose of the Fourth Amendment is "to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Taylor v. City of Saginaw*, 922 F.3d 328, 332 (6th Cir. 2019) (quoting *Camara v. Mun. Court of San Francisco*, 387 U.S. 523,528 (1967)). "[W]hat the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." *Terry v. Ohio*, 392 U.S. 1, 9 (1968) (quoting *Elkins v. United States*, 364 U.S. 206, 222 (1960)).

The Fourth Amendment "contains no provision expressly precluding the use of evidence obtained in violation of its commands." *Herring v. United States*, 555 U.S. 135,

139 (2009) (quoting *Arizona v. Evans*, 514 U.S. 1, 10 (1995)). Over the course of many years, the Supreme Court developed the "exclusionary rule," which "forbids the use of improperly obtained evidence at trial." *Id.* The rule is "designed to safeguard Fourth Amendment rights generally through its deterrent effect" and is not a "necessary consequence of a Fourth Amendment violation." *Id.* at 139–40, 141 (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)); *Davis v. United States*, 564 U.S. 229, 236–37 (2011) (citations removed) ("Exclusion is not a personal constitutional right, nor is it designed to redress the injury occasioned by an unconstitutional search. The rule's sole purpose . . . is to deter future Fourth Amendment violations.").

The exclusionary rule serves to "prohibit[] introduction into evidence materials seized during an unlawful search, and of testimony concerning knowledge acquired during an unlawful search." *United States v. Howard*, 621 F.3d 433, 451 (6th Cir. 2010) (quoting *Murray v. United States*, 487 U.S. 533, 536–37 (1988)). It also prohibits "the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes so attenuated as to dissipate the taint." *Id.*

In deciding whether evidence was obtained illegally, "the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial." *United States v. Raddatz*, 447 U.S. 667, 679 (1980); Fed. R. Civ. P. 104(a) ("The court must decide any preliminary question about whether . . . evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege.").

### III. DISCUSSION

### A. Probable Cause

The Fourth Amendment requires probable cause to issue a search warrant. U.S. Const. amend. IV; *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005). A court's review of the sufficiency of the evidence supporting probable cause is "limited to examining the information contained within the four corners of the affidavit." *United States v. Dyer,* 580 F.3d 386, 390 (6th Cir. 2009).

Probable cause is "a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Algie,* 721 F.2d 1039, 1041 (6th Cir. 1983) (internal quotation marks and citations omitted). "The probable cause standard is a 'practical, non-technical conception' that deals with the 'factual and practical considerations of everyday life.'" *Laughton,* 409 F.3d at 747-48.(quoting *Illinois v. Gates,* 462 U.S. 213, 231 (1983)). "When reviewing a magistrate's determination that probable cause existed for the issuance of a search warrant, [a court] must determine, under a totality of the circumstances, whether 'the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing.'" *United States v. Miggins,* 302 F.3d 384, 394 (6th Cir. 2002) (quoting *United States v. King,* 227 F.3d 732, 739 (6th Cir. 2000)). The court affords the magistrate judge's probable cause determination "great deference," and such determination "should not be set aside unless arbitrarily exercised." *United States v. Pelham,* 801 F.2d 875, 877 (6th Cir. 1986) (citations omitted). In service of this standard, an "affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen,* 211 F.3d 970, 975 (6th Cir. 2000).

5

Taken as a whole, the circumstances provided in the affidavit presented a sufficient nexus linking the fatal shooting and the cell phones in Defendant's possession. The affidavit established Defendant's identity as one of the suspects seen pursuing the victim and later discarding guns matching the caliber of the casings found near the victim's body. The surveillance videos established that Defendant has at least one coconspirator who helped him hunt down the victim and get away from the scene. The affidavit also described how three vehicles, one of which was the suspects' getaway car, moved in a coordinated fashion before the shooting. A reasonable inference is that communications needed to be instantaneously made to facilitate such an effort, most likely via phones. It is thus reasonable for the affiant, who had extensive law enforcement experience, to believe that probable cause existed to find exchanges between co-defendants related to the shooting on Defendant's phones. *See United States v. Gholston*, 993 F. Supp. 2d 704, 720 (E.D. Mich. 2014) ("[A] number of courts have found that an affidavit establishes probable cause to search a cell phone when it describes evidence of criminal activity involving multiple participants and includes the statement of a law enforcement officer, based on his training and experience, that cell phones are likely to contain evidence of communications and coordination among these multiple participants."). While the affidavit could probably have been clearer, the court reviews the affidavit "in a commonsense-rather than a hypertechnical-manner." *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004). "Affidavits are not required to use magic words, nor does what is obvious in context need to be spelled out." *Allen*, 211 F.3d at 975. Here, the affidavit, reviewed with commonsense, provided probable cause.

The situation here is different from that in *United States v. Ramirez,* 180 F. Supp. 3d 491 (W.D. Ky 2016), where the affidavit merely stated that the defendant was arrested for drug conspiracy, he had a cell phone when he was arrested, and the arresting officer knew "through training and field experience that individuals may keep text messages or other electronic information stored in their cell phones which may relate them to the crime and/or codefendants/victim." *Id.* at 494. The district court there suppressed evidence obtained from the defendant's cell phone for lack of probable cause, because "[t]he only information in the affidavit indicating any likelihood that evidence of a crime might be found on [the defendant's] phone was the fact that he was arrested for an alleged drug conspiracy while he possessed the phone." *Id.* at 495. Here, there is more, as the affidavit described how Defendant, whose identity as a suspect was confirmed, was seen on videos committing crimes with others, instead of merely being charged with doing so. Unlike *Ramirez*, a sufficient nexus links the cell phones in Defendant's possession and his alleged criminal activities in this instance.

Defendant ostensibly raises a staleness argument when he asserts that "the cell phones were found in [his] possession over two months after the alleged murder." (ECF No. 296, PageID.2409.) However, Defendant has made no effort to develop this theory. (*Id.*) It is well accepted that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 996 (6th Cir. 1997) (citation omitted) (alteration in the original omitted); *see also United States v. Hayter Oil Co.,* 51 F.3d 1265, 1269 (6th Cir.1995) (holding that defendant

7

waived argument when he did nothing more than make a conclusory assertion that rights were violated and made no attempt to show prejudice); *United States v. Phibbs,* 999 F.2d 1053, 1080 n. 12 (6th Cir.1993) ("[I]t is not our function to craft an appellant's arguments."). The court nonetheless notes that it was reasonable to believe that Defendant's cell phones would still contain evidence of his participation in the murder conspiracy two months earlier, because "evidence on cell phones has a 'particularly long life span'." *United States v. Regaldo*, No. 2:18-CR-20033-JTF, 2020 WL 2200441, at *2 (W.D. Tenn. May 6, 2020); *see also United v. Curry,* 723 F. App'x 314, 317-18 (6th Cir. 2018) ("Computer evidence has a particularly long life span; even after evidence is deleted by a user, it often can be recovered by law enforcement.").

In short, the affidavit in support of the warrant to search Defendant's cell phones provided sufficient information for the magistrate judge to infer a nexus linking them to the murder conspiracy.

### B. Good Faith Exception

"When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in criminal proceeding against the victim of the illegal search and seizure." *United States v. Carpenter,* 360 F.3d 591, 595 (6th Cir. 2004) (quoting *Illinois v. Krull,* 480 U.S. 340, 347 (1987)). However, "[t]he fact that a Fourth Amendment violation occurred ... does not necessarily mean that the exclusionary rule applies." *Herring v. United States,* 129 S.Ct. 695, 700 (2009). Even if a reviewing court concludes that a warrant lacked probable cause, courts should not suppress "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *Carpenter,* 360 F.3d at 595 (quoting *United States v. Leon*,

8

468 U.S. 897, 922 (1984)). "The burden rests on the government to prove that [the executing officer's] reliance on a warrant was objectively reasonable." *United States v. Rissew,* 580 Fed. Appx. 35, 36 (2nd Cir. 2014).

For the reliance to be reasonable, the affidavit must not be "bare bones," meaning it must identify a "minimally sufficient nexus" between the place to be searched and the evidence to be seized. *See United States v. Reed*, 993 F.3d 441, 450 (6th Cir. 2021) (citing *Carpenter*, 360 F.3d at 596). A "minimally sufficient nexus" is present where there is "some connection, regardless of how remote it may have been – some modicum of evidence, however slight – between the criminal activity at issue and the place to be searched." *Id.* (citing *United States v. McCoy*, 905 F.3d 409, 418 (6th Cir. 2018)). "The inquiry into whether an affidavit is so bare bones as to preclude application of the good-faith exception is a less demanding inquiry than the one involved in determining whether an affidavit provides a substantial basis for the magistrate judge's conclusion of probable cause." *United States v. Rose*, 714 F.3d 362, 367 (6th Cir. 2013) (citing *Laughton*, 409 F.3d at 748-49).

As discussed above, the court finds that the search warrant of Defendant's cell phones was supported by probable cause. Even if the court had come to a different conclusion, the Government has met its burden of showing that law enforcement would have reasonably relied on the warrant. Here, there was substantially more than some slight "modicum of evidence" connecting evidence of the shooting with Defendant's cell phones. The affidavit described the crime and the steps taken by law enforcement to ascertain Defendant as one of the suspects. Evidence indicated concerted and coordinated criminal efforts during and after the shooting. The affiant, who had

9

extensive law enforcement experience and was a member of the major crime/homicide unit, believed that Defendant's phones contained evidence related to the shooting. This is not the type of "bare bones" affidavit that is lacking in any indicia of probable cause.

Additionally, the affidavit was signed off by a county prosecutor before being presented to the magistrate. This fact has been recognized as an important piece of evidence demonstrating the officer's good-faith belief in the propriety of the affidavit. *See Massachusetts v. Sheppard*, 468 U.S. 981, 989 (1984) (noting the fact that the detective "prepared an affidavit which was reviewed and approved by the District Attorney" helped demonstrate that "[t]he officers in this case took every step that could reasonably be expected of them"); *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012) ("[T]he fact that the officers sought and obtained approval of the warrant application from a superior and a deputy district attorney before submitting it to the Magistrate provides further support for the conclusion that an officer could reasonably have believed that the scope of the warrant was supported by probable cause."); *United States v. Bynum*, 293 F.3d 192, 198 (4th Cir. 2002) ("[T]hat [the affiant] consulted with the prosecutor prior to applying for the search warrant provides additional evidence of his objective good faith, like the law enforcement officer in *Leon*."); *United States v. Pappas*, 592 F.3d 799, 804 (7th Cir. 2010) ("[The affiant's] efforts to consult with an Assistant United States Attorney prior to seeking a warrant further demonstrate her good faith."); *United States v. Johnson*, 78 F.3d 1258, 1264 (8th Cir. 1996) ("Seeking the advice of an attorney can be factored in to determine if an officer's conduct is objectively reasonable."); *United States v. Brown*, 951 F.2d 999, 1005 (9th Cir. 1991) ("[A]n officer's consultation with a government attorney is of significant importance to a

finding of good faith."); *United States v. Taxacher*, 902 F.2d 867, 872 (11th Cir. 1990) (finding an officer's consultation "with the local district attorney before seeking the search warrant, and then submit[ting] the matter to a neutral magistrate. . . indicative of objective good faith").

In short, even if the warrant at issue lacked probable cause, the good faith exception would apply, making exclusion an inappropriate remedy.

## IV. CONCLUSION

Here, the affidavit in support of the July 21, 2017 search warrant contained the requisite facts for the issuing judge to find sufficient probable cause. And even if the search warrant was defective, the good-faith exception applied. Accordingly,

IT IS ORDERED that the October 5,2022 "Order Granting the Government's Motion to Strike Defendant's September 23, 2022 Motion to Suppress" (ECF No. 318) is SET ASIDE and "Defendant's Motion to Suppress Evidence Obtained as a Result of Search Warrant" (ECF No. 296) is DENIED.

IT IS FURTHER ORDERED that "United States' Motion to Strike Defendant's Motion to Suppress Evidence Obtained as a Result of Search Warrant" (ECF No. 298) is DENIED AS MOOT.

                                                s/Robert H. Cleland
                                                ROBERT H. CLELAND
                                                UNITED STATES DISTRICT JUDGE

Dated: October 19, 2022

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 19, 2022, by electronic and/or ordinary mail.

                                                s/Lisa Wagner
                                                Case Manager and Deputy Clerk
                                                (810) 292-6522

S:\Cleland\Cleland\NTH\Criminal\20-20448.PETERSON.SuppressPhonesSearchWarrant.NTH.docx